UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

Case No. 26-cr-52 (MAD)

GREGORY MAGIN,

Defendant.

# SENTENCING MEMORANDUM ON BEHALF OF GREGORY MAGIN

**HACKER MURPHY, LLP**

Julie A. Nociolo, Esq.
*Attorneys for defendant*
*Gregory Magin*
Bar Roll No. 519914
22 Corporate Woods
Suite 404
Albany, New York 12211
(518) 274-5820
jnociolo@hackermurphy.com

Gregory Magin, a 46-year-old father with no prior criminal history, stands before this Court convicted of one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of Possession of Child Pornography in violation 18 U.S.C. § 2252(a)(5)(B). In his Rule 11(c)(1)(C) plea, Mr. Magin accepted responsibility for his conduct and respectfully requests that he be sentenced to a period of incarceration on the low end of the agreed upon range, which punishes him in a manner that is sufficient but not greater than necessary.

## I. FORMULATING A FAIR SENTENCE

It is black letter law that the guidelines are advisory and are simply one consideration among many sentencing factors and that 18 U.S.C. §3553(a) provides the framework and the criteria which the Sentencing Judge must consider. See United States v. Booker, 543 U.S. 220 (2005). At the end of the analysis the punishment must be just and fair and must meet the fundamental dictate for federal sentencing that the sentencing process shall result in: "a sentence sufficient but not greater than necessary" to achieve the goals of a fair, proportionate, balanced and just sentence. Id. at 245-46.

The following criteria are provided by Section 3553(a):

- the nature and circumstances of the offense, and history and characteristics of the defendant;
- the need for the sentence imposed-
  (A) to reflect the seriousness of the offense; to promote respect for the law, and to provide just punishment for the offense;
  (B) to avoid adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant;
  (D) to provide the defendant education, training, medical care or treatment
- the kinds of sentences available;
- the sentencing guidelines;
- any pertinent policy statements in the guidelines;
- the need to avoid sentencing disparity;
- the need to provide restitution. *See* 18 U.S.C. §3553(a).

Defendant adopts the facts set forth in the Presentence Investigation Report ("PSR") and the calculation of his criminal history category. Mr. Magin pled guilty to a single count of both distribution and possession and entered into a Rule 11(c)(1)(C) plea agreement with the government, which this Court accepted. Dkt. No. 59. Contained within that agreement is an agreed-upon disposition in which the parties agree to, among other things, a sentencing range of 180-360 months of imprisonment. Id. ¶ 3. For the reasons discussed below, Mr. Magin respectfully requests that the Court sentence him to a period of imprisonment at the low end of the agreed upon range.

Enclosed with Mr. Magin's sentencing submission are the following supporting exhibits:

| | |
|---|---|
| Exhibit A | Gregory Magin Mitigation Report, Liberty Advisors, LLC, dated July 16, 2026 |
| Exhibit B | Affidavit of Andrea M. Brockman, PsyD, dated June 16, 2026 |
| Exhibit C | Andrea Brockman Curriculum Vitae |
| Exhibit D | Affidavit of Jack Donson, Federal Prison Education and Reform Alliance-PERA, Executive Director, dated July 16, 2026 |
| Exhibit E | Jack Donson Curriculum Vitae |
| Exhibit F | Redacted Final Progress Note from Taylar Delisle, LMHC-D, Clearwater Counseling Associates LCSW, PLLC, dated February 26, 2026 |
| Exhibit G | Redacted New Paradigm Psychological Services PLLC, Psychosexual Assessment Summary, dated November 7, 2025 |
| Exhibit H | Katrina Colistra, PsyD Curriculum Vitae |
| Exhibit I | Redacted New Paradigm Psychological Services PLLC, Risk of Sexual Abuse of Children (ROSAC) |

| | |
|---|---|
| | Assessment, dated October 27, 2025 |
| Exhibit J | Certificates of Competition for various Rehabilitation Programming |

## II. BACKGROUND

Gregory Magin is a 46-year-old man with no criminal history, a husband of over two decades to his college sweetheart, and father of two daughters. He grew up in the Capital District along with his younger sister Janine to their parents Michael, an employee with the New York State Department of Health, and Beth, a registered pharmacist. Following college at SUNY Plattsburgh, Greg and his wife Rebekah relocated to Massachusetts for a few years before settling down in the Capital District.

In 2005, Greg and Rebekah married and later had two daughters. As made clear in both the character letters submitted separately, Dkt. No. 77, and in the report prepared by Liberty Advisors LLC, Exhibit A, Greg's entire identity became devoted to fatherhood and his family upon the birth of his two daughters. Greg participated in the individual interests of each of his daughters and was deeply involved in whatever direction they wanted to pursue. See Exhibit A at 12-15. Rebekah described Greg as "[i]n many ways, he was the primary caregiver" because "[h]e was in contact with our daughters' teachers, made doctor's appointments and accompanied the girls to them, kept track of when their favorite movies we[]re coming out and really centered our girls and the family in his every day and every decision." Dkt. No. 77 at 1.

In 2020, Greg and Rebekah's oldest daughter was diagnosed with juvenile dermatomyositis, a rare and serious autoimmune disease significantly impacting her muscle weakness. PSR ¶ 82; Exhibit A at 14-15. At the outset, Greg described how terrifying that time was because his daughter was unable to complete basic life functions including bathing and

dressing. Initially, his daughter had to stay overnight at the hospital to stabilize her condition. Because of her medical condition, the Make-A-Wish Foundation contacted the family for their daughter to cast her wish. Presently, his daughter's condition is largely stabilized, however, she still must go to Albany Medical Center Children's Hospital for monthly injections. Greg remains grateful that the Court granted his requests to attend his daughter's medical treatment under supervision while on pretrial release. Dkt. Nos. 24; 32.

Greg's life stands in stark contrast to the conduct he accepted responsibility for in this case. Through the rehabilitative work Greg engaged in both before he was arrested and throughout this prosecution, Greg recognizes the harm that he has caused to victims in this case and the pain that his family will continue to endure by his actions. Greg acknowledged as such in his statement contained in the presentence investigation report:

> *I acknowledge and accept full responsibility for my actions, and I apologize to the victims, my family, and the Court for the wrong I've done. Nearly two years ago, I made the biggest of my life. In its aftermath, well before knocks at the door or police lights in my rearview mirror, I cried for help and I prayed for peace. There's not a day that goes by that I don't reflect on the real harm that I caused. I love my wife, more than life itself, and as a dad, I know what it is to love a child and to want, above all else, for them to be safe, and good, and happy. And it's why being a dad is my favorite job I ever had. But as a father of daughters, I'm particularly ashamed at what I did. Since 2024, months before my arrest, I've engaged seriously in therapy and mental health medication management, confronting parts of myself that I avoided for years. And I have returned to my Catholic faith as a framework for repentance and discipline. This whole process has been humbling and sobering. And so, if there's one takeaway, it's that I'm deeply committed to ongoing treatment, transparency, and accountability. And that I look forward to one day returning to my family as a husband and a father who owns his failure and rebuilds with integrity.*

PSR ¶ 51.

Starting in Spring 2024, Greg began to hit rock bottom. He engaged in problematic alcohol abuse by concealing his alcohol intake from his wife to the point where he would purchase additional alcohol and hide it from her in his home office or the garage. PSR ¶ 85. Greg explained to probation that during that time alcohol became a "crutch" and a "way to feel alive when the depression crept in." Id. ¶ 86. Rebekah describes that Greg started working during time that was reserved for family time citing restlessness and work pressure. Dkt. No. 77 at 2. She observed that "[h]is isolation had become severe and almost absolute, he was sleeping less and less, and his mood was fluctuating, again, all of which led to his unusual demeanor." Id. Rebekah recognized and "help[ed] Greg [] identify and name his depression." Dkt. No. 77 at 2. Greg reported at the same time he was experiencing suicidal ideation and made several calls to the New York State 988 Suicide and Crisis Lifeline and began seeking help. PSR ¶ 86. Rebekah, however, "had no idea that [Greg] was already making use of the suicide hotline regularly and had ague plans for ending his life. And of course, [she] had no idea about the depraved behavior he had resorted to during his mental health crisis." Id. Ultimately, Rebekah reports that "[d]espite the horror of the situation and the realization of what [her] husband has done, [she] do[es] believe getting caught and arrested saved his life." Id.

After law enforcement executed a search warrant in December 2024, Greg took immediate steps towards rehabilitation. He engaged in psychiatric treatment with Willow Behavioral Health via telehealth the following week and was referred to Clearwater Counseling Services and began psychotherapy with Taylar Delisle, LMHC-D in January 2025. Exhibit A at 19.

From January 2025 through the end of February 2026 before he was remanded at his plea, Greg engaged in one in-person and one telehealth therapy session per week with Taylar Delisle,

LMHC-D. Exhibit A at 19; Exhibit F. Greg discovered much about himself during this time including previously untreated mental health conditions of bipolar II disorder and posttraumatic stress disorder. In treatment, Greg worked diligently to address areas of his past, which had not been previously explored. While no excuse for his conduct in this case, Greg discussed with me the sex abuse he experienced as a child that he did not fully explore until engaging in psychotherapy. PSR ¶ 78; Exhibit A at 7, 9.

Additionally, in early January 2025, two months before he was arrested, Greg enrolled in the Sex Offender Treatment Program with New Paradigm Psychological Services, PLLC where he attended weekly in-person sessions. Exhibit G at 1.

Following his detention hearing shortly after his arrest, the Court imposed strict conditions including, among other things, home detention and a requirement that Greg reside at his parents' home rather than his martial home with his wife and daughters. Dkt. No. 12. Greg worked towards potentially petitioning the Court to modify his conditions to allow him to reunite with his wife and daughters. In doing so, I recommended that he engage New Paradigm Psychological Services, LLC to perform a Risk of Sexual Abuse of Children (ROSAC) assessment. Exhibit I. Ultimately, defendant elected not to move the Court to modify his conditions. However, enclosed for the Court's review is that ROSAC assessment, which opines that in October 2025, Greg had **No Clear Present Risk**. Exhibit I.

In November 2025, the government moved to reopen defendant's detention hearing and seek his detention. Dkt. No. 43. In response, defendant filed a psychosexual assessment summary prepared by Katrina Colistra, PsyD of New Paradigm Psychological Services, PLLC. Dkt. No. 50; Exhibit G. Following testing, interviews and a review of the relevant discovery, Dr. Colistra

opined that Greg's overall sexual reoffense risk was **Below Average**. Exhibit G at 3. Significantly, Dr. Colistra found that Greg "did not suffer from persistent sexually deviant interests or antisocial personality disorder at this time." Id. Dr. Colistra noted that those two traits "have been repeatedly demonstrated through the research to be the strongest predictors of sexual reoffending." Id. Additionally, she noted that Greg enrolled in New Paradigm's Sex Offender Treatment Program, approximately eleven months earlier, in January 2025. Id. at 1.

Judge Stewart denied the government's request to reconsider the Court's detention order finding, among other things, that defendant remained compliant with his pretrial services conditions for eight months and that "past performance may be the best indicator of future conduct and the ability of the Court to feel confident that the Defendant will abide by conditions." Dkt. No. 52 at 7 (internal citation omitted).

Before he was remanded at the time of his plea, Greg engaged in additional rehabilitative work including couples therapy, family counseling, spiritual direction and counseling as well as self-directed study. When he struggled with depressive thoughts and a greater reliance on alcohol, Greg followed the recommendation of his therapist and engaged in virtual intensive outpatient treatment through Charlie Health. Exhibit A at 19. Greg's rehabilitative efforts are further discussed in the report prepared by Liberty Advisors, LLC. Exhibit A at 19-20. Following his plea, Greg was remanded to Schenectady County Correction Facility where he enrolled in available coursework demonstrating his continued commitment to rehabilitation after incarceration. Exhibit J. Greg's active engagement with therapy, treatment, counseling, and independent study demonstrates he recognizes his own need to get help and a willingness to continue.

As best said by Greg's family and friends in letters filed separately, he is more than the reason he comes before the Court. It is readily apparent that he has a supportive family and continues to foster a loving relationship with his wife and daughters. Greg is deeply regretful of his conduct, fully accepts responsibility for his misguided decisions, and welcomes the opportunity to continue the treatment he started before his arrest in the case and continued while on pretrial release. He knows he will be paying for his decisions every day of his life, grateful that his arrest saved his life, and understands that he will need to do much more to repair and sustain the relationships with his loved ones.

## III. RESTITUTION, ASSESSMENTS, & FINE

Mr. Magin is prepared to pay the $3,000 restitution requested by a known series victim immediately at the time of sentencing. Dkt. No. 67. Mr. Magin respectfully asks the Court to consider the factors under Section 5E1.2(d) and (e)(2) of the United States Sentencing Guidelines and impose limited additional financial penalties in this case. A period of incarceration of at least 180 months incarceration for a defendant with no criminal history and a below average recidivism rate is sufficient to meet the goals of sentencing.

## IV. BOP PLACEMENT & REQUESTED PROGRAMMING

Enclosed with this submission are the affidavits of Jack Donson and Andrea Brockman, PsyD. Exhibits B & D. Dr. Brockman was previously employed for approximately 11.5 years as a clinical psychologist with the Federal Bureau of Prisons. Exhibit B at 1; Exhibit C. Mr. Donson served in security classification, correctional programs, and treatment for twenty-three years with the Federal Bureau of Prisons, is the executive director of a non-profit organization called the Federal Prison Education and Reform Alliance-PERA, and is the founder of My Federal Prison

Consultant. Exhibit D ¶¶ 2, 3; Exhibit E.

Based upon the review of the case, both opine that Mr. Magin would be placed at a Care Level 2 for Mental Health Care Level and Mr. Donson opines that Mr. Magin would be placed at Care Level 1 for Physical Health Care Level. Exhibit B at 6; Exhibit D ¶ 20. Mental Health Care Level 2 "inmates generally present with significant but relatively stable psychiatric conditions requiring routine mental health intervention, psychiatric monitoring, and access to treatment services." Exhibit B at 6. Here, Dr. Brockman opines that "Mr. Magin's diagnoses of Bipolar II Disorder, Major Depressive Disorder, Generalized Anxiety Disorder, and Post-Traumatic Stress Disorder, together with his history of suicidal ideation, crisis intervention, intensive outpatient treatment, and recurrent depressive episodes, support designation at the Care Level 2". Id.

Mr. Donson states that Mr. Magin presents with four of the thirteen criteria from the assessment tool instituted under the First Step Act referred to as SPARC-13 (Specialized Prisoner Assessment for the Reduction in Criminality). Exhibit D ¶ 24. These four criteria are substance abuse, parenting, trauma, mental health, and cognitions. Id. Accordingly, Mr. Donson recommends that he participate in various programs including Sex Offender Treatment Program (SOTP). Id. at 25. However, there are different levels of the SOTP program. One, is a high intensive residential program and is typically reserved for incarcerated individuals with multiple sex offenses and contact offenses and, the other, is a less intensive, non-residential program for incarcerated individuals with a single offense, which is ordinarily non-contact. Id. Both Mr. Donson and Dr. Brockman recommend that based on their review of Mr. Magin's case that he be designated to FCI Elkton, Ohio to participate in SOTP and receive mental health care level two services. Id. ¶ 30; Exhibit B at 7. This facility is the closest to the Capital District, which provides

the requested programming and mental health care.

## V. CONCLUSION

For the reasons set forth above, Mr. Magin respectfully requests the Court impose sentence of imprisonment at the low end of the agreed upon range. Additionally, Mr. Magin requests that he be designated to a BOP facility close to Albany, New York that provides non-residential sex offender treatment programming (SOTP) and that he participate in SOTP and receive mental health care level two services.

DATED: July 21, 2026

Respectfully submitted,

HACKER MURPHY, LLP

JULIE A. NOCIOLO, ESQ.

**CERTIFICATE OF SERVICE**

I, Julie A. Nociolo, hereby certify that on July 21, 2026, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Assistant United States Attorney Allen Vickey.

HACKER MURPHY LLP

JULIE A. NOCIOLO, ESQ.
*Attorney for defendant Gregory Magin*