AFFIDAVIT OF ANDREA M. BROCKMAN, PSY.D.

I, Andrea M. Brockman, PsyD, hereby declare under penalty of perjury that the following is true and correct.

**Statement of Expertise:**

I currently serve as the Clinical Director at Morgan County Correctional Complex within the Tennessee Department of Correction. Before this role, I served for two years as an Ombudsman with the Florida Department of Corrections (FDC), where I was responsible for addressing inmate concerns, reviewing institutional practices, and evaluating conditions of confinement.

Before my work with the FDC, I was employed for approximately 11.5 years as a Clinical Psychologist with the Federal Bureau of Prisons (BOP), beginning my career there in 2013 as a Staff Psychologist. During my tenure with the BOP, I held several advanced roles, including Advanced Care Level Psychologist, Special Management Unit Coordinator, and Reintegration Unit Coordinator, where I worked extensively with high-risk and complex inmate populations. In addition to my correctional experience, I have been working part-time as an adjunct professor since 2009, teaching courses in psychology and criminal justice. I have also provided training in mental health, substance use, and crisis intervention to local, state, and federal law enforcement personnel. My professional background reflects extensive experience at the intersection of correctional systems, mental health care, and institutional safety.

During my career with the BOP, I worked directly with incarcerated adults (including District of Columbia citizens, as there is no formal state correctional system in Washington DC) as a Clinical Psychologist. In that capacity, I was responsible for intake/transfer screenings, suicide risk evaluations, crisis interventions, psychological evaluations, individual and group treatment, creation of evidence-based programs, and the supervision of 8 treatment specialists. I was the first special management unit coordinator in the FBOP, co-created the first Secure STAGES program unit, and developed and implemented the Reintegration Unit at FCI Lewisburg.

Additionally, I have served as an Acting Residential Drug Abuse and Treatment Program Coordinator, Acting Challenge Coordinator, and Acting Chief Psychologist. Following the creation of the First Step Act of 2018, I executed the completion and scoring of the needs assessment of the incarcerated adults housed at FCI Lewisburg. After scoring of the needs assessment, I identified antisocial peer needs, criminal cognitions need, mental health need, trauma need, and anger need. Based on the needs assessment, a code would be entered into Sentry, identifying a yes or no, depending on the scoring outcome. The incarcerated adults were then placed on a waiting list for the identified evidence-based and productive activity programs based on their identified needs.

My skillset is unique, policy-focused, and has been influenced by daily, direct interactions with the incarcerated adults housed in the federal prison system. This interaction has continued through contacts with attorneys, non-governmental and governmental organizations, and email correspondence with incarcerated people throughout the federal prison system. In my role as the Clinical Psychologist, I regularly interacted with defense attorneys, providing training related to the programs offered through the First Step Act and provided testimony in hearings regarding programming and recidivism. I continue to serve as an expert witness in sentence reduction and

federal clemency cases.

I possess a Bachelor of Arts in Criminal Justice and Psychology, a Master of Science in Criminal Justice and Clinical Psychology, and a Doctor of Psychology (PsyD) in Clinical Psychology. Beginning in 2008, I have provided educational services at the graduate and undergraduate levels. Specifically, teaching Criminal Justice courses, Applied Behavioral Analysis courses, and Forensic Psychology Courses. A true and correct copy of my Curriculum Vitae is attached. I have personal knowledge of the facts stated herein and can testify competently thereto if called as a witness in this matter.

**Scope of Work**

I have been asked by counsel to provide a professional opinion regarding the mental health treatment needs, management, and care requirements of Mr. Magin while in Bureau of Prisons (BOP) custody. In forming my opinions, I have reviewed the psychiatric evaluation, supporting records, diagnostic findings, risk assessment information, and documented symptom presentation. As part of this affidavit, it is essential to identify Mr. Magin's mental health treatment needs and the level of psychological and psychiatric services required during incarceration, as these determinations directly affect access to necessary mental health care, continuity of treatment, medication management, programming opportunities, and overall institutional management. Appropriate identification of treatment needs and placement considerations are critical factors in assessing which BOP institutions can adequately address Mr. Magins's clinical needs and provide the level of care required during his period of incarceration.

**Sex Offense Vulnerability:**

Based upon my experience as a psychologist employed within the Federal Bureau of Prisons, individuals convicted of sexual offenses represent one of the most vulnerable populations housed within correctional institutions.

Unlike many other categories of offenders, individuals convicted of sexual offenses frequently enter custody carrying a level of stigma that extends beyond the ordinary consequences of incarceration. Once the nature of an individual's conviction becomes known among the inmate population, he may become the target of verbal harassment, intimidation, extortion, coercion, threats of violence, social ostracism, and physical victimization. These concerns are particularly pronounced for individuals convicted of offenses involving minors.

Importantly, the impact of this vulnerability extends well beyond physical safety concerns. The anticipation of victimization often produces chronic anxiety, hypervigilance, emotional distress, sleep disturbance, social withdrawal, and a persistent sense of insecurity. Individuals may limit their participation in institutional activities, avoid recreational opportunities, and become reluctant to engage in educational or vocational programming due to concerns regarding exposure to other inmates.

In my professional experience, it is not uncommon for these individuals to spend a considerable amount of emotional energy attempting to conceal offense-related information or assessing potential threats from their environment. Such efforts may become psychologically exhausting and may significantly interfere with treatment engagement and rehabilitation.

The Bureau of Prisons recognizes that certain inmates face elevated risks of victimization and provides mechanisms for identifying and addressing safety concerns. Nevertheless, the stigma associated with sexual offense convictions remains a significant factor affecting institutional adjustment and psychological functioning. As a result, correctional and mental health professionals routinely consider both treatment needs and vulnerability to victimization when making recommendations regarding institutional placement and programming.

**Impact of Conviction:**

Based upon my review of the available records and my professional experience within correctional settings, individuals convicted of offenses involving the enticement or exploitation of minors frequently face unique psychological and institutional challenges during incarceration.

These individuals are often among the most stigmatized members of the prison population and may experience heightened concerns regarding personal safety, disclosure of offense history, and institutional adjustment. Even in facilities that maintain appropriate security measures, the perceived threat of victimization may contribute to chronic stress and psychological distress.

The emotional burden associated with these concerns often manifests through increased anxiety, depressive symptoms, social withdrawal, and feelings of shame, diminished self-worth, and hypervigilance. For individuals who already possess preexisting mental health vulnerabilities, the correctional environment may amplify symptoms and impair coping abilities.

From a rehabilitative perspective, these challenges are particularly relevant because psychological distress may interfere with treatment participation and institutional adjustment. Individuals who are primarily focused on maintaining personal safety often struggle to fully engage in therapeutic programming until their basic concerns regarding security and stability have been adequately addressed.

Consequently, correctional placement decisions should consider not only security requirements but also the individual's psychological functioning, treatment needs, and vulnerability to victimization.

**Mental Health History and Clinical Presentation:**

Based upon my review of the available records, Mr. Magin presents with a well-documented history of significant psychiatric symptoms that appear to have progressively worsened during the period preceding his arrest and continued following his incarceration.

The records indicate that beginning in approximately early 2024, Mr. Magin experienced a noticeable decline in emotional functioning characterized by increasing depressive symptoms, emotional dysregulation, impaired coping, social withdrawal, and escalating reliance upon alcohol as a maladaptive means of managing psychological distress. His descriptions of feeling as though he was "unraveling" reflect a subjective awareness that his emotional functioning was deteriorating and that his customary coping mechanisms were becoming increasingly ineffective.

Particularly noteworthy is the fact that Mr. Magin repeatedly sought assistance during this period. Records indicate multiple contacts with the 988 Suicide and Crisis Lifeline as well as engagement with numerous mental health treatment providers. In my professional opinion, these actions are significant because they demonstrate insight into his deteriorating mental health and a willingness to seek intervention during periods of distress.

The available records indicate participation in individual psychotherapy, sex-offense-specific treatment, intensive outpatient programming, couples counseling, and family therapy. Such treatment engagement is clinically meaningful because it reflects a pattern of help-seeking behavior and an ongoing willingness to participate in rehabilitation.

During the course of treatment, Mr. Magin received diagnoses including Bipolar II Disorder, Major Depressive Disorder, Generalized Anxiety Disorder, and Post-Traumatic Stress Disorder. These conditions are chronic psychiatric disorders associated with impaired stress tolerance, fluctuations in mood stability, increased emotional reactivity, anxiety symptoms, depressive episodes, and vulnerability during periods of significant environmental stress.

The records further indicate that as recently as early 2026, treatment providers documented worsening depressive symptoms, increased self-harm ideation, emotional instability, and renewed alcohol use as a means of regulating emotional distress. Although he reportedly denied direct self-injurious behavior, he described passive self-destructive conduct and diminished regard for personal safety. Such presentations are clinically significant because they often represent indicators of escalating psychological distress and impaired coping.

Following his incarceration, Mr. Magin reportedly experienced severe depressive episodes requiring ongoing mental health intervention. The available information suggests that his distress has been significantly influenced by separation from family, concern regarding the impact of his offense on loved ones, shame associated with his conduct, uncertainty regarding the future, and the inherent stressors associated with confinement.

Importantly, despite these challenges, the records consistently reflect an individual who has demonstrated a willingness to engage in treatment, participate in self-examination, and pursue rehabilitative opportunities. These factors represent meaningful strengths and are associated with improved treatment outcomes when appropriate services are made available.

**Mental Health Status:**

In my professional opinion, Mr. Magin remains psychiatrically vulnerable and is likely to experience periods of increased psychological distress throughout his period of incarceration. This opinion is based upon his documented history of mood instability, depressive episodes, anxiety symptoms, trauma-related symptomatology, prior suicidal ideation, maladaptive alcohol use, and the substantial psychosocial stressors associated with incarceration.

Correctional confinement represents a uniquely stressful environment that often magnifies preexisting mental health vulnerabilities. Separation from family, loss of autonomy, diminished access to customary support systems, uncertainty regarding the future, and the emotional consequences of criminal conviction frequently contribute to worsening psychiatric symptoms among individuals with preexisting mental health conditions.

For individuals convicted of sexual offenses involving minors, these stressors are often compounded by concerns regarding personal safety, stigma, social isolation, and victimization.
The cumulative effect of these factors may significantly increase the risk of depressive symptoms, hopelessness, emotional withdrawal, anxiety, sleep disturbance, and impaired coping.

The records reviewed indicate that Mr. Magin has historically experienced difficulties regulating emotional distress during periods of heightened stress. Consequently, it is reasonable to

anticipate that future stressors encountered during incarceration may periodically result in increased psychological symptoms.

At the same time, there are several factors that significantly improve his overall prognosis. Most notably, Mr. Magin has consistently demonstrated a willingness to seek treatment, participate in therapeutic interventions, and engage in self-examination. He has repeatedly sought assistance during periods of distress rather than completely disengaging from treatment services. Such behavior reflects an important degree of insight and is generally associated with more favorable long-term outcomes.

Accordingly, while I anticipate continued psychiatric vulnerability, I also believe that Mr. Magin possesses a meaningful capacity to benefit from treatment when appropriate services are made available. In my professional opinion, his prognosis is significantly improved when he has access to structured mental health services, psychiatric monitoring, evidence-based interventions, and rehabilitative programming.

**Protective Factors and Rehabilitative Strengths:**

An important aspect of any comprehensive psychological assessment involves consideration of both risk factors and protective factors. While Mr. Magin presents with identifiable psychiatric vulnerabilities, he also demonstrates numerous strengths that support rehabilitation and psychological stabilization.

Most significant is his documented willingness to engage in treatment. Prior to his arrest and following his arrest, Mr. Magin actively participated in multiple forms of therapeutic intervention, including individual psychotherapy, family counseling, couples counseling, intensive outpatient treatment, and sex-offense-specific treatment. Such participation reflects motivation for self-improvement and a demonstrated willingness to address problematic behaviors.

The records further suggest a substantial degree of psychological insight. Mr. Magin appears capable of recognizing emotional deterioration, identifying distress, and seeking assistance when symptoms become overwhelming. His repeated utilization of crisis resources and mental health services is clinically significant because many individuals experiencing comparable distress do not seek treatment until symptoms have become substantially more severe.

Additionally, the available records indicate the presence of meaningful prosocial attachments, particularly with family members. Research consistently demonstrates that healthy family relationships and supportive social connections serve as important protective factors against psychological deterioration and future maladaptive behavior.

Another notable strength is his demonstrated capacity for sustained participation in structured treatment environments. Individuals who are willing to engage in treatment, tolerate difficult therapeutic discussions, and continue participating despite emotional discomfort often demonstrate greater long-term rehabilitative potential than those who remain resistant to intervention.

In my professional opinion, these factors collectively support the conclusion that Mr. Magin possesses meaningful rehabilitative strengths that should be fostered and reinforced throughout his incarceration.

**Risk of Psychological Deterioration:**

Although Mr. Magin possesses substantial rehabilitative strengths, it is my opinion that he remains at elevated risk for periods of psychological deterioration if appropriate treatment resources are not consistently available.

Several factors contribute to this concern.

First, his psychiatric history reflects chronic mood disturbance, anxiety symptoms, trauma-related symptomatology, and prior suicidal ideation. These conditions are generally manageable with appropriate treatment but may worsen during periods of environmental stress.

Second, his history of alcohol misuse suggests prior reliance upon maladaptive coping mechanisms during times of emotional distress. While incarceration removes access to alcohol, it does not eliminate the underlying emotional vulnerabilities that contributed to its use.

Third, the emotional consequences of incarceration itself—including separation from loved ones, diminished autonomy, uncertainty regarding the future, and shame associated with criminal conduct—represent ongoing psychological stressors that may contribute to symptom exacerbation.

Finally, the stigma associated with offenses involving minors may create additional barriers to institutional adjustment and may increase feelings of isolation, vulnerability, and emotional distress.

For these reasons, I believe continued monitoring of mood symptoms, anxiety symptoms, suicidal ideation, and overall psychological functioning will remain clinically important throughout his incarceration.

**Bureau of Prisons Care Level Classification:**

Mental Health Care Level designation is not merely a clinical classification; it is a significant factor in determining the institutions capable of meeting an inmate's treatment needs and ensuring appropriate continuity of care. Based upon my review of the available information and my familiarity with the Bureau of Prisons Care Level Classification system, it is my professional opinion that Mr. Magin would most appropriately be designated as a Mental Health Care Level 2 inmate.

Care Level 2 inmates generally present with significant but relatively stable psychiatric conditions requiring routine mental health intervention, psychiatric monitoring, and access to treatment services. These individuals typically require more support than is available through Care Level 1 services but do not exhibit the degree of psychiatric instability ordinarily associated with Care Level 3 or Care Level 4 designations.
Mr. Magin's diagnoses of Bipolar II Disorder, Major Depressive Disorder, Generalized Anxiety Disorder, and Post-Traumatic Stress Disorder, together with his history of suicidal ideation, crisis intervention, intensive outpatient treatment, and recurrent depressive episodes, support designation at the Care Level 2 level.

At present, there is insufficient evidence to suggest active psychosis, severe cognitive impairment, chronic psychiatric instability, or persistent functional deterioration that would necessitate Care Level 3 or Care Level 4 placement.

However, mental health classifications should remain subject to ongoing clinical review. Should his symptoms significantly worsen or should he experience psychiatric decompensation during

incarceration, a higher level of mental health intervention may become necessary.

**Recommended Institutional Placement:**

Institutional placement is one of the most significant factors affecting treatment access, safety, psychological stability, and rehabilitative outcomes within the Bureau of Prisons. In my professional opinion, Mr. Magin's treatment needs would be best served at a Bureau of Prisons institution participating in the Sex Offender Management Program (SOMP) while also possessing the capability to provide Mental Health Care Level 2 services.

SOMP institutions are uniquely positioned to address the treatment needs of individuals convicted of sexual offenses through specialized assessment, treatment planning, cognitive-behavioral interventions, relapse prevention programming, and long-term risk management services.

Such facilities also tend to house larger populations of similarly situated offenders, which may reduce some of the stigma and victimization concerns commonly encountered by individuals convicted of offenses involving minors. This environment may facilitate greater participation in treatment and improve institutional adjustment.

Historically, FCI Elkton has provided access to non-residential sex offender treatment programming while maintaining mental health resources capable of addressing ongoing psychiatric needs.

Placement within such an institution would likely provide the most appropriate balance of safety, offense-specific treatment, psychological services, psychiatric care, and rehabilitative opportunity.

Should Bureau of Prisons clinicians determine that more intensive psychiatric intervention becomes necessary, consideration should be given to placement within a Federal Medical Center capable of addressing more significant mental health needs while maintaining access to specialized programming.

**Rehabilitative Potential:**

One of the most important considerations in evaluating future functioning is an individual's capacity to benefit from intervention.

In my professional opinion, the available records provide substantial evidence that Mr. Magin possesses meaningful rehabilitative potential.
This opinion is supported by his extensive treatment participation, willingness to seek assistance during periods of distress, demonstrated insight into his emotional functioning, and repeated efforts to engage in therapeutic services both before and after his arrest.

Importantly, the records do not portray an individual who is unwilling to engage in treatment or resistant to self-examination. Rather, they describe an individual who has repeatedly attempted to obtain assistance during periods of significant psychological distress and who has demonstrated a willingness to participate in treatment when services are available.

While no mental health professional can guarantee future outcomes, these characteristics are generally associated with improved treatment responsiveness and increased rehabilitative potential.

**Professional Opinion:**

Based upon my education, training, professional experience, and review of the available records, it is my professional opinion that Mr. Magin presents with significant but treatable psychiatric conditions requiring ongoing mental health care throughout his incarceration.

His diagnoses of Bipolar II Disorder, Major Depressive Disorder, Generalized Anxiety Disorder, and Post-Traumatic Stress Disorder, together with his history of suicidal ideation, emotional dysregulation, and maladaptive coping, place him at elevated risk for future episodes of psychological distress.

At the same time, the available information demonstrates substantial rehabilitative strengths, including treatment engagement, psychological insight, willingness to seek assistance, and meaningful social support.

In my opinion, placement within a Bureau of Prisons institution capable of providing Mental Health Care Level 2 services, specialized SOMP programming, psychiatric monitoring, and evidence-based psychological treatment would best address his clinical needs, promote institutional stability, enhance rehabilitative opportunities, and maximize the likelihood of long-term psychological adjustment. For these reasons, careful consideration of both Mental Health Care Level designation and institutional placement is essential to ensuring that Mr. Magin receives appropriate mental health treatment, offense-specific programming, and a correctional environment that supports both safety and rehabilitation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16 day of June, 2026.

Andrea M. Brockman, PsyD
Licensed Clinical Psychologist; TN 2448; PA PS020616